UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAN CLARKE,

    Plaintiff,

v.

PACIFIC GAS & ELECTRIC COMPANY, et al.,

    Defendants.

Case No. 20-cv-04629-WHO

**ORDER ON DISCOVERY DISPUTE**

Re: Dkt. No. 47

The parties have submitted a joint letter to resolve their dispute concerning: (i) defendants Pacific Gas and Electric Company and PG&E Corporation's (collectively "PG&E") responses to plaintiff Dan Clarke's Requests for Admission ("RFAs") Nos. 5–8, 22, and 50–51; and (ii) Clarke's responses to PG&E's Interrogatory Nos. 1–15. Discovery Dispute Letter [Dkt. No. 47]. I address each in turn.

<u>RFA Nos. 5–8 From Clarke to PG&E</u>: The issue here is whether the discovery sought is premature because it is part of the issues to be developed in Phase 2 of the bifurcated discovery scheme ordered by the court after the parties' stipulation. Phase 1 discovery is limited to "Direct and/or Successor Liability" and Phase 2 is all other discovery. *See* Dkt. No. 37.

The disputed requests ask PG&E to admit that Equitable Gas Light Company ("Equitable") "transported," "stored," "handled," or "disposed" of "Waste at the Cannery MGP Site." *See* Discovery Dispute Letter, Ex. A at 3–4. PG&E objected to the requests as beyond the scope of Phase 1. It neither admitted nor denied RFA Nos. 5 and 7–8. With respect to RFA No. 6 (regarding "storage" of waste), it denied the request on the basis of insufficient information.

Equitable is the entity that operated the Cannery MGP from approximately 1898 to 1903 before it transferred its business and property to San Francisco Gas and Electric ("SFG&E").

PG&E has accepted liability for SFG&E's acts. It denies liability for Equitable's acts and denies that SFG&E took actions that would create liability under the Resource Conservation and Recovery Act ("RCRA") or the Clean Water Act ("CWA").

Clarke contends that whether Equitable transported, stored, handled, or disposed of waste at the Cannery MGP site is probative of PG&E's successor liability in two independent ways: (i) whether Equitable took these actions goes to whether Equitable took acts the liability for which SFG&E could succeed to; and (ii) proof that Equitable transported, stored, handled, or disposed of waste at the Cannery MGP site would tend to prove that when SFG&E acquired the Cannery MGP there was waste on it, in which case SFG&E—unless it removed the waste from the site upon acquisition—was itself a storer of such waste. He argues that the second point is potentially critical as PG&E intends to argue that SFG&E never operated the Cannery MGP after its acquisition from Equitable, and has denied information sufficient to admit or deny that MGP waste existed on the Cannery MGP site or was removed from it, at any time during either Equitable's or SFG&E's ownership of the Cannery MGP.

In PG&E's view, Clarke's requests are not within the scope of the first phase of discovery because the RFAs do not relate to whether PG&E operated (or took any other act with respect to) the Cannery MGP or to any theory by which Clarke contends that PG&E hold's successor liability for Equitable's acts or omissions. Contrary to Clarke's second point, PG&E argues that he already has responses from PG&E to separate RFAs that asked about transport, storage, handling, or disposal of waste by SFG&E and PG&E.

I agree with PG&E that, at least technically, these requests call for Phase 2 discovery. The issue for Phase 1 is whether PG&E could be liable for the acts of Equitable as a result of direct/successor liability. PG&E cannot argue that Equitable did not do any of the actions that initiated the pollution alleged in this case as a reason that there is no successor liability unless discovery has occurred on that issue: I will not hold Clarke's lack of proof on Equitable's conduct against him in any motions that follow Phase 1. For purposes of those motions, if PG&E does not respond to these requests I will assume that Equitable transported, stored, handled, or disposed of waste at the Cannery MGP, and will focus on the other evidence on which direct/successor

1 liability could be based.

2 <u>RFA Nos. 50–51 from Clarke to PG&E</u>: These requests ask PG&E to "[a]dmit that it has performed testing, sampling, and/or investigation activities" within, respectively, the Cannery MGP Site (the footprint of the former MGP) and Cannery MGP Vicinity (the area within a 1-kilometer radius of the former MGP). *See* Discovery Dispute Letter, Ex. A at 17. PG&E objected to both requests as "beyond the scope of the phase 1 discovery." *Id.*

Clarke argues that information regarding whether PG&E investigated the area is probative of whether such waste exists on the site, as well as whether PG&E suspected that it existed on the site. In his view, the existence of waste on the site, now, is probative of the existence of such waste on the site during SFG&E's ownership, which would make it a storer of such waste. If SFG&E stored waste on the site, PG&E—which concedes successor liability from SFG&E—has RCRA liability.

PG&E points out that Clarke has not raised any theory of PG&E's liability that could be based on whether it has conducted testing at a particular MGP site or within a kilometer of such a site and has not directly asked, in these RFAs, whether waste exists at the site. In written correspondence on this issue, Clarke's counsel suggested that if PG&E conducted testing at the site, it must shed light on whether PG&E *believed* it was liable for the Cannery MGP. PG&E argues that Clarke's inference between testing and liability does not follow because, as part of an agreement with the United Stated Environmental Protection Agency, PG&E conducted initial soil testing at MGPs within its service territory regardless of PG&E's connection—or lack thereof—to the MGP at issue. Even if the testing could show PG&E's belief regarding liability at some former time, PG&E argues that such belief would not form a basis for successor liability.

Again, I agree with PG&E. Testing is not an admission of liability for direct/successor liability. The results of that testing will certainly be relevant to the merits of Clarke's claims, but the testing itself is not relevant to direct/successor liability.

<u>RFA No. 22 from Clarke to PG&E</u>: This request asks PG&E to "[a]dmit that SFG&E continued the Cannery MGP's business after purchasing Equitable." *See* Discovery Dispute Letter, Ex. A at 8. PG&E's responded: "Assuming that 'continued the Cannery MGP's business'

3

means continued Equitable's former use of the Cannery MGP for the production and sale of manufactured gas, denied." *Id.*

Clarke argues that PG&E's objection assumes an overly narrow definition of the phrase "continued the Cannery MGP's business" in order to improperly deny the request and conflicts with its response to Interrogatory No. 7. In response to Interrogatory No. 7, PG&E stated:

> Assuming that "operated" means the use of the MGP for the production and sale of gas, SFG&E never operated the Cannery MGP. Upon acquisition of the Cannery MGP, SFG&E shut down the MGP, immediately connected its distribution system to that of the SFG&E, moved the generators to the Independent Gas Works at Potrero, and later dismantled the gasholders for transport to the Independent Gas Works.

*See* Discovery Dispute Letter, Ex. C at 4–5. Reading the two responses together, Clarke contends that PG&E must admit RFA No. 22 because it admitted that SFG&E "connected [the Cannery MGP's] distribution system to that of SFG&E," and thus SFG&E continued at least two aspects of the Cannery MGP's business: the distribution and sale of manufactured gas, which it accomplished using the Cannery MGP's distribution system.

PG&E argues that Clarke's perceived conflict between the two responses is an argument he can make, but it does not amount to a deficiency in PG&E's response that could require an order compelling a different response. I agree. Clarke's perceived conflict between the two responses cannot compel PG&E to change its responses. He can challenge PG&E's theory—that SFG&E did not "operate" or "continue the Cannery MGP's business" because SFG&E did not use the MGP for the production and sale of gas, even though it connected the Cannery MGP's distribution system to that of the SFG&E—but he cannot compel PG&E to change its response.

Clarke's Responses to PG&E's Interrogatories: In his response to PG&E's interrogatories, Clarke lodged a series of objections and answered only "subject to" those objections. He prefaced lists of facts with the term "inter alia" and he referenced "regulatory documents" without specifying further. These are obviously ambiguous responses that Clarke will have to clarify. Clarke says that the dispute is not ripe for my review because the parties have not met and conferred and that he intends to resolve PG&E's concerns in the coming days. He should do so

4

promptly.

**IT IS SO ORDERED.**

Dated: May 7, 2021



William H. Orrick
United States District Judge