UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN CLARKE,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, et al.,<br><br>    Defendants. | Case No. 20-cv-04629-WHO<br><br>**ORDER ON SECOND DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 52 |

Plaintiff Dan Clarke and defendants Pacific Gas and Electric Company and PG&E Corporation (collectively "PG&E") have submitted a joint letter to resolve a dispute concerning Clarke's Notice of Deposition of PG&E (the "Notice"). The parties dispute PG&E's objections and responses to three categories of information. Second Discovery Dispute Letter [Dkt. No. 52]. I address each in turn.

Category No. 3: This category pertains to "Equitable's use of the Cannery MGP and Cannery MGP Site, including without limitation activities related to the generation, transport, storage, and/or handling of manufactured gas and Waste." Ex. A (PG&E Objections to Clarke's Notice of Deposition at 3–4). Equitable is the entity that operated the Cannery MGP from approximately 1898 to 1903 before it transferred its business and property to San Francisco Gas and Electric ("SFG&E"). PG&E has accepted liability for SFG&E's acts. It denies liability for Equitable's acts and denies that SFG&E took actions that would create liability.

PG&E contends that it has already admitted, in its Answer, that Equitable operated the Cannery MGP from 1898 through August 1903. Dkt. No. 48 ¶ 62. The *details* of that operation, it argues, is not related to successor liability in Phase 1 discovery, but rather to Equitable's potential contamination of the site, a topic reserved for Phase 2 discovery. *See* Case Management Order

[Dkt. No. 37].

Clarke contends that he needs information to connect liability between SFG&E and Equitable. One way he claims he can do that is by showing that SFG&E and Equitable were in a *de facto* merger. A relevant factor of a *de facto* merger is whether, post-acquisition, "[t]here [was] a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations." *United States v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1042 (E.D. Cal. 2013), *aff'd,* 977 F.3d 750 (9th Cir. 2020). To make this comparison, he argues that he needs to know about the predecessor's (Equitable's) pre-acquisition enterprise in order to determine whether the successor (SFG&E) continued that enterprise post-acquisition.

Clarke is entitled to information under this category. Although PG&E has provided *when* Equitable was operational, Clarke would need to know the *details* of that operation in order to compare it to SFG&E's post-acquisition operation and support his *de facto* merger theory. *See, e.g.*, *Sterling Centrecorp*, 960 F. Supp. 2d at 1043 (finding the evidence established the "continuation of enterprise" factor of a *de facto* merger because the former mine site owner's business operation matched the kind of operation continued by the successor company, including "disposal" both before and after acquisition).

Category No. 34: This category asks PG&E to designate a witness to testify regarding "The content and authenticity of Documents produced by Defendants and Plaintiffs in this litigation." Ex. A at 16. During the meet and confer process, Clarke reduced the scope of this request to the approximately 200 documents produced by PG&E in this litigation (not in any related litigation) and 8 documents produced by Clarke that were authored by PG&E. The parties dispute whether PG&E is required to produce a witness to testify concerning the content of all of these documents and as to the authenticity of the 8 PG&E documents produced by Clarke.

PG&E should designate a witness to testify about the authenticity of the 8 PG&E documents produced by Clarke. To the extent that Clarke seeks a PG&E witness to testify about the content of all documents, the request is denied without prejudice to the extent it becomes necessary to explore the parties' interpretation of certain documents during summary judgment

adjudication or at some later point in the litigation.

Category No. 36: This category asks PG&E to designate a witness to testify regarding "Whether the Documents created and/or produced by PG&E in this litigation and in Case No. 14-cv-04393-WHO are business records, as that term is used in Federal Rule of Evidence 803(6); as party statements, per Federal Rule of Evidence 801(d)(2); and/or other hearsay exemptions." Ex. A at 17. As before, Clarke agreed to limit this category to the 8 PG&E documents produced by him and the approximately 200 documents produced by PG&E in this litigation.

I agree with PG&E that this category improperly calls for a witness to testify about legal conclusions regarding each of the documents, rather than facts about the documents. *See Zeleny v. Newsom*, No. 17-CV-07357-RS (TSH), 2020 WL 3057467, at *2 (N.D. Cal. Jun. 9, 2020) ("[Q]uestions about legal contentions are 'an improper topic for a Rule 30(b)(6) deposition.'") (quoting *Lenz v. Universal Music Corp.*, 2010 WL 1610074, at *3 (N.D. Cal. April 20, 2010)). To the extent that Clarke is concerned that PG&E may object to the admissibility of documents that he submits during summary judgment briefing, I will address that on a case-by-case basis, unless the parties utilize a more practical approach to deal with the admissibility of documents.

**IT IS SO ORDERED.**

Dated: July 8, 2021

William H. Orrick
United States District Judge